UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-19-15
```

CLAUDE GALLAND, *et al.*,

                      Plaintiffs,

-v-

JAMES JOHNSTON, *et al.*,

                      Defendants.

No. 14-cv-4411 (RJS)
OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION

RICHARD J. SULLIVAN, District Judge:

Claude and Violaine Galland (together, "Plaintiffs"), proceeding pro se, bring this action against James and Judith Johnston (the "Johnstons"), and Stephen and Terri Bowden (the "Bowdens," and, together with the Johnstons, "Defendants") for, *inter alia*, breach of contract, defamation, and tortious interference with business relations, stemming from reviews left by the Johnstons and the Bowdens on a property rental website. (Doc. No. 2 ("Compl.").) Now before the Court is the Report and Recommendation of the Honorable Ronald L. Ellis, Magistrate Judge, recommending that the Court dismiss the Complaint with the exception of the breach of contract claims, deny Plaintiffs' motion for summary judgment, and deny Plaintiffs' motion to amend the Complaint. (Doc. No. 30 ("Rep." or "Report").) For the reasons set forth below, the Court adopts the Report in its entirety.

I. BACKGROUND

A. Facts

The Court assumes the parties' familiarity with the facts of this case and summarizes only those facts necessary to the disposition of the pending motions.[1] Plaintiffs are the owners of an

---

[1] Because the standard for dismissing a motion to amend on grounds of futility is identical to the standard for dismissing a claim pursuant to Rule 12(b)(6) and Rule 12(c), the Court looks to facts from both the Complaint and the Proposed Amended Complaint (Doc. No. 18 (the "PAC")) in deciding the motions. The Court has also considered the Johnstons' memorandum of law in support of their motion to dismiss (Doc. No. 4), Plaintiffs' response and purported motion for

apartment in Paris, France (the "Apartment"), which they list on the short term property rental website VRBO for rental by people traveling to Paris. (PAC ¶ 8.) From May 17 to May 23, 2014, the Bowdens stayed in the Apartment, and from May 24 to May 28, 2014, the Johnstons stayed in the Apartment. (PAC ¶ 63; PAC, Exhibits, at 43.)[2] Each couple signed a rental agreement prior to renting the Apartment, in which they promised, among other things, "not to use blogs or websites for complaints, anonymously or not." (Compl., Exhibits, at 11.) Following their respective stays, each of the Bowdens and Johnstons left a review of the Apartment on VRBO, connected to the Apartment's listing on that website. As set forth in the Proposed Amended Complaint, the Bowdens wrote:

> Small and noisy but close to the Notre Dam [*sic*.]
>
> This apartment was much smaller than it appeared in the pictures. There is a mirrored wall that makes it look larger than it is. To be fair, it does compare in size with other places I have stayed in Paris. It is in a very noisy neighborhood, The Latin Quarter, and we could hear people on the street most of the night and on the weekends they were very loud going up and down the stairs at all hours of the night!! Be prepared for no air conditioner. There is a portable fan which was a big help. Pack light as there is no closet and no drawers to put your clothes. The kitchen is really [too] small to cook in other than fix coffee or heat something up. The bathroom is also tiny. I would not recommend this for more than 2 people! On the plus side, it is attractive enough and very close to the metro and Notre Dam [*sic*.].

(PAC ¶ 63.) The Johnstons wrote:

> Retired couple -
>
> We just left this apartment today. This was an awful experience. The studio itself will look like the photo & the sheets are clean, but the entry "behind the blue door" is awful and is shared as the back door to a Pizza Place. They prop the door open with a beer keg, right next to the trash cans. Expect a 2 story climb of narrow stairs, sloping floor, poor lighting, exposed utilities, broken and patched plaster. There is no way this Apt is getting all 4 & 5 stars. The reviews are way too wordy and sound like the owner. There was no mgr. Samy to help us even when we called him. Microwave didn't work,

---

partial summary judgment (Doc. No. 10), the Johnstons' reply in support of their motion to dismiss (Doc. No. 16), the Johnstons' opposition to Plaintiffs' motion to amend the Complaint (Doc. No. 19), the Bowdens' memorandum of law in support of their motion to dismiss (Doc. No. 25), the Bowdens' reply brief in further support of their motion to dismiss (Doc. No. 26), and Plaintiffs' opposition to the Bowdens' motion (Doc. No. 27).

[2] Both the Complaint and the PAC include exhibits, but neither numbers the exhibits or otherwise provides a system for identifying them. Accordingly, in order to refer to exhibits, the Court will refer to the page on which a particular exhibit lies within the PDF file of the Complaint or PAC. For example, here, the Johnstons' rental agreement appears on the 43rd page of the PDF containing the PAC.

> hair dryer with broken wires shorted out. This self-described archeological building is a physical mess and a fire hazard. We were embarrassed to enter and couldn't wait to get out of there. We have stayed in several lovely ancient apartments in Europe. The building conditions always matched the interior of the apt. Don't be deceived by the #20279 advertisement.

(*Id.*)

Additionally, on or around June 26, 2014 – after the commencement of the instant lawsuit but presumably before the Bowdens had been served with a copy of the Complaint, given the reference to *threatened* litigation – Terri Bowden wrote a letter to VRBO, which was not posted or otherwise available to the public, complaining about her experiences with Claude Galland. In the letter, she noted that after she left her three-star review of the Apartment, Claude Galland sent her two emails which she perceived to be "threatening and disturbing," and which requested that she remove the review from VRBO. The letter indicated that Mr. Galland offered the Bowdens $300 for the removal of the review, which Terri Bowden found "equivalent to bribery and extortion." The letter further stated that Terri Bowden had "no intention of caving in to Mr. Galland's threats and attempts to intimidate me," and wondered "how many people he has done this to and how many of those people have been intimidated enough to withdraw their less than 4 to 5 star reviews. There is no way this property could be considered to be 4 or 5 stars!" (PAC ¶ 63.) Finally, the letter requested that the Gallands be banned from making any listing on VRBO or any affiliated website, because VRBO is "not the place for a person who chooses to run his business in a threatening manner to get good reviews." (*Id.*)

B. Procedural History

On June 18, 2014, Plaintiffs commenced this action by filing the Complaint, bringing claims for (1) breach of fiduciary duty, (2) breach of contract, (3) "intentional negligence," (4) extortion, and (5) defamation. (Compl. ¶¶ 36–40.) The gist of the Complaint is that the reviews left by the Johnstons and the Bowdens, and the letter sent by Terri Bowden, are defamatory. On July 11, 2014, the

3

Johnstons filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 4.) Plaintiffs filed an opposition to the Johnstons' motion, along with a cross-motion for summary judgment as to the breach of contract claims, on July 28, 2014. (Doc. No. 10.) On August 25, 2014, Plaintiffs filed a motion to amend the Complaint, together with the PAC. The PAC adds a claim for tortious interference with business relations and, for the first time, sets forth in their entirety the reviews and letter upon which the claims are based. The Johnstons filed an opposition to the motion to amend on September 12, 2014. (Doc. No. 19.) On October 14, 2014, the Bowdens filed a motion for judgment on the pleadings pursuant to Rule 12(c), along with a memorandum of law in support of the motion. (Doc. Nos. 23–24.) That motion was fully briefed following Plaintiffs' opposition on October 27, 2014. (Doc. No. 27.)

On January 13, 2015, Judge Ellis issued the Report, which recommends that the Court dismiss the Complaint with the exception of the breach of contract claims, deny Plaintiffs' motion for summary judgment, and deny Plaintiffs' motion to amend the Complaint on grounds of futility. (Rep.) On January 26, 2015, Plaintiffs timely filed objections to the Report. (Doc. No. 31 ("Objections" or "Objs.").) The Objections take exception to the Report's (1) conclusion that Defendants' reviews are strictly opinion and do not constitute defamation, (2) failure to consider Terri Bowden's letter separately in assessing the defamation claims, and (3) conclusion that the Complaint does not adequately allege that Plaintiffs' business relationship was injured, such that the tortious interference with business relations claim cannot lie. None of the Defendants filed any objections or responded to Plaintiffs' Objections.

## II. LEGAL STANDARD

### A. Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) or 12(c) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns,*

*Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss for failure to state a claim, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

B.  Motion to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), a "court should freely give leave [to amend a pleading] when justice so requires." However, the Court should deny leave to amend if there is "evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Futility is assessed based on the same standard as dismissal for failure to state a claim, such that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim." *Id.*

C.  Motion for Summary Judgment

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.  A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of

evidence [in the record] to support the nonmoving party's [position]," *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### D.  Review of Report and Recommendation

The standard for reviewing a magistrate judge's report and recommendation is well settled. When no party objects, the Court may adopt the report if there is no clear error on the face of the record. *See Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005). A magistrate judge's decision is "clearly erroneous" only if the district court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). When a party objects, the objections "must be specific and clearly aimed at particular findings in the magistrate judge's proposal." *Harden v. LaClaire*, No. 07-cv-4592 (LTS) (JCF), 2008 WL 4735231, at *1 (S.D.N.Y. Oct. 27, 2008). "[I]f the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Dawson v. Phillips*, No. 03-cv-8632 (RJS) (THK), 2008 WL 818539, at *1 (S.D.N.Y. Mar. 25, 2008) (internal quotation marks omitted); *see also Forsberg v. Always Consulting, Inc.*, No. 06-cv-13488 (CS), 2008 WL 5449003, at *4 (S.D.N.Y. Dec. 31, 2008) ("[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument."). However, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); *see also Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989) (explaining that § 636(b)(1) "affords the district court broad latitude" in reviewing the magistrate judge's recommendation).

III. DISCUSSION

With respect to the argument that Judge Ellis erred in concluding that the reviews are not defamatory, Plaintiffs' contention is a merely generalized assertion that is not aimed at any specific finding in the Report, and simply reiterates arguments previously made to Judge Ellis. This purported objection is thus improper as seeking a "second bite at the apple." *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009). Accordingly, the Court reviews the conclusion that Defendants' reviews are not defamatory only for clear error, and has very little difficulty concluding that the recommendation was not clearly erroneous. Indeed, to have concluded otherwise would most certainly have constituted clear error. However, Plaintiffs do raise two objections properly: that Judge Ellis failed to consider Terri Bowden's letter separately in assessing Plaintiffs' defamation claims, and that Judge Ellis overlooked the fact that Plaintiffs pre-pay for VRBO ad space, such that his conclusion that Plaintiffs' business relations were unharmed by Terri Bowden's letter was erroneous. Accordingly, the Court will consider each of these objections *de novo*.

A. Defamation in Terri Bowden's Letter

As to Plaintiffs' contention that Terri Bowden's letter to VRBO – separate from the reviews left on the Apartment's VRBO listing by the Bowdens and the Johnstons – was defamatory, the Court concludes that dismissal of the defamation claim, and denial of the motion to amend as to the defamation claim, is warranted.[3] "In New York, a plaintiff must establish five elements to recover in libel: (1) a written defamatory factual statement concerning the plaintiff; (2) publication to a third party; (3) fault; (4) falsity of the defamatory statement; and (5) special damages or *per se* actionability." *Chau v. Lewis*, 771 F.3d 118, 126–27 (2d Cir. 2014). To meet the first requirement,

---

[3] All claims relating to Terri Bowden's letter were first put forth in the PAC, as the letter was sent after the commencement of this litigation.

8

the statement at issue must be "defamatory, it must be . . . factual – that is, not opinion – and it must be . . . about the plaintiff, not just a general statement." *Id.*

In New York, the determination of whether a statement is a fact or an opinion is left to the Court. *See, e.g., Belly Basics, Inc. v. Mothers Work, Inc.*, 95 F. Supp. 2d 144, 145 (S.D.N.Y. 2000).[4] "There is no bright line test to aid in determining whether a statement is one of opinion or fact, as expressions of 'opinion' may often imply an assertion of objective fact." *Id.* Rather, the Court must consider three factors: "(1) whether the challenged statements have a precise and readily understood meaning; (2) whether the statements are susceptible of being proven false; and (3) whether the context signals to the reader that the statements are more likely to be expressions of opinion rather than fact." *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 302 (S.D.N.Y. 1998); *see also Brian v. Richardson*, 660 N.E.2d 1126, 1129 (1995) (outlining the three factors). In considering context, the Court must look to "the content of the communication as a whole, as well as its tone and apparent purpose," and should examine the "nature of the particular forum." *Brian*, at 660 N.E.2d at 1129–30. "When the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, not fact." *Sabratek Corp. v. Keyser*, No. 99-cv-8589 (HB), 2000 WL 423529, at *6 (S.D.N.Y. Apr. 19, 2000). Additionally, while statements of opinion may imply a basis in fact and be actionable in defamation, statements of opinion "that are accompanied by a recitation of supporting facts, or . . . that do not imply the existence of such facts, are not." *Abbott v. Harris Publications, Inc.*, No. 97-cv-7648 JSM, 1998 WL 849412, at *5 (S.D.N.Y. Dec. 4, 1998) (citing *Gross v. New York Times Co.*, 623 N.E.2d 1163, 1168 (1993) ("[A] proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture.")); *see also Levin v. McPhee*, 119 F.3d 189, 197

---

[4] Although neither party addressed choice of law, the briefs assume New York law, and "such implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation marks omitted).

9

(2d Cir. 1997) ("Though some statements may be characterized as hypothesis or conjecture, they may yet be actionable if they imply that the speaker's opinion is based on the speaker's knowledge of facts that are not disclosed.").

Here, after considering the three factors necessary to determining whether a statement is fact or opinion – that is, whether the statement has a "precise and readily understood meaning," whether the statement is "susceptible of being proven false," and whether the "context signals to the reader that the statements are more likely to be expressions of opinion rather than fact," *Cytyc*, 12 F. Supp. 2d at 302 – the Court concludes that all of the letter's allegedly defamatory statements are pure opinion and are thus non-actionable.

First, there is little doubt that statements reflecting that (1) "There is no way [the Apartment] could be considered 4 or 5 stars!," (2) "[Mr. Galland] has offered me $300 to rescind the review, which *in my mind* is *equivalent* to bribery and extortion," (3) "I have received 2 emails from Mr. Galland which *I found* to be both threatening and disturbing in which he requested that I withdraw my review or face legal action for 'breach of contract,'" and (4) "I . . . do not wish to hear from Mr. Galland again and would *request* that he be banned from advertising on VRBO or any affiliated sites," are opinion on their face. (PAC ¶ 63 (emphasis added).) Each of these statements is expressly couched in terms indicating that the writer – Terri Bowden – was stating her *opinion* as to actions undertaken by Galland, or as to the nature of the Apartment. Additionally, the letter recites that Galland offered $300 in exchange for her taking down the VRBO review, and that Galland threatened a lawsuit for breach of contract if she did not comply – neither of which is disputed by Plaintiffs – without any suggestion that Terri Bowden premised her opinions on any facts besides these. Clearly, the allegedly defamatory letter was written by a frustrated renter to VRBO in order to voice dissatisfaction with the conduct of one of its property owners; read in context, the statements would be immediately understood by any reasonable reader as opinion. In fact, the Proposed Amended

10

Complaint makes clear that the letter's recipient – a VRBO representative – actually understood the letter as opinion-based, since when he forwarded the letter to Plaintiffs, he noted, "We take complaints seriously, but also understand that there are two sides to every story." (PAC Ex. p. 57.)

Likewise, the letter's reference to the fact that VRBO is "not the place for a person who chooses to run his business in a threatening manner to get good reviews," and its speculation as to "how many people [Claude Galland] has done this to and how many of those people have been intimidated enough to withdraw their . . . reviews," are clearly opinions in context. Obviously, such statements are not readily understood as having a precise meaning, nor are they susceptible of being proven false. To the extent these statements imply any fact – *e.g.*, that Plaintiffs run their business in a threatening manner to maintain good reviews – the statements are accompanied by a recitation of the facts on which they are based, as noted above. Indeed, in context, those very facts – that Mr. Galland threatened Terri Bowden with litigation and offered her money in exchange for the rescission of the review, and that the Apartment's reviews are more positive than she would expect – clearly demonstrate that her speculation regarding Plaintiffs' conduct with *other* renters is just that: *speculation*, based on her own experiences, as to whether Plaintiffs have engaged in the same conduct with other renters. Her belief that Plaintiffs might be engaging in threatening and intimidating conduct with other renters is based exclusively on the fact that she felt threatened and intimidated, and any reasonable reader would have, in context, understood the letter to be expressing conjecture and speculation, not fact. *See Sabratek*, 2000 WL 423529, at *6. Accordingly, the Court grants the Bowdens' motion to dismiss and denies Plaintiffs' motion to amend insofar as the Complaint and PAC are premised on Terri Bowden's letter.

### B.  Tortious Interference with Business Relations

The Objections also challenge Judge Ellis's conclusion that Plaintiffs' proposed amendment, which added a tortious interference with business relations claim, was futile. (*See* Objs. at 2; Rep. at

4.) Specifically, the Report found that the PAC failed to allege that Plaintiffs' relationship with VRBO was injured – which is an element of tortious interference with business relations under New York law – such that amendment would be futile.[5] This conclusion was based in part on the fact that Plaintiffs' ads are still running on VRBO, but according to the Objections, those ads "were pre-paid a year in advance," and the fact that they remain is not evidence of a continuing relationship with VRBO. (Objs. at 2.) However, even accepting the fact that Plaintiffs' ad space with VRBO was pre-paid – a fact alleged nowhere in the Complaint or PAC – Plaintiffs have still failed to affirmatively plead the fact that the relationship between Plaintiffs and VRBO was actually injured.[6] Plaintiffs have thus failed to plead a necessary element of their tortious interference with business relations claim, and Judge Ellis correctly denied their motion to amend the complaint.

## C.  Remainder of the Report

Finally, the Court has carefully reviewed the rest of Judge Ellis's recommendation and the record, and, in the absence of any other objections, concludes that the Report is not otherwise clearly erroneous. Accordingly, the Court adopts the remainder of the Report in its entirety.

## IV.  CONCLUSION

For the foregoing reasons, the Court adopts the Report in its entirety and HEREBY ORDERS THAT the Johnstons' and Bowdens' motion to dismiss are GRANTED to the extent they seek dismissal of all but the breach of contract claims and DENIED to the extent they seek dismissal of

---

[5] The elements of tortious interference with business relations in New York are: "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir. 1997).

[6] Judge Ellis correctly limited the tortious interference with business relations inquiry to Plaintiffs' relationship with VRBO, as opposed to Plaintiffs' hypothetical relationships with future renters, since a relationship must presently exist for it to form the basis of a tortious interference claim. *See, e.g.*, *Mahmud v. Kaufmann*, 454 F. Supp. 2d 150, 162 (S.D.N.Y. 2006) ("To claim tortuous interference with a prospective business relationship a plaintiff must specify some particular, existing relationship through which plaintiff would have done business but for the allegedly tortuous behavior." (alteration and internal quotation marks omitted)).

the breach of contract claims.  IT IS FURTHER ORDERED THAT Plaintiffs' motion to amend the complaint and motion for summary judgment as to the breach of contract claims are DENIED.

IT IS FURTHER ORDERED THAT the Johnstons shall file an answer to the Complaint with respect to the sole remaining cause of action – the breach of contract claim – no later than April 13, 2015.  The case shall remain referred to Judge Ellis for general pre-trial supervision and for a report and recommendation on any dispositive motions, and the parties shall comply with any orders set forth by Judge Ellis.  The Clerk of the Court is respectfully directed to terminate the motions pending at docket entry numbers 4, 10, 18, and 22.

SO ORDERED.

Dated:   March 19, 2015
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

A copy of this Order has been sent to:

Claude and Violaine Galland
166 West 75th St
Suite 1214
New York, NY 10023

James and Judith Johnston
1025 Pinecrest Terrace
Ashland, OR 97520